UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES OF NEVADA, INC., MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES, INC., GORDON ALLRED, ALVIN NAJIB MANSOUR, KEVIN NAJIB MANSOUR, PERRY WHITE, and NENAD ZIVKOVIC, <br><br>Plaintiffs, <br><br>v. <br><br>JOSEPH DECKER, in his official capacity as Administrator of the Real Estate Division, Department of Business & Industry, State of Nevada, and NORMA JEAN OPATIK, NEIL SCHWARTZ, SHERRIE CARTINELLA, DEVIN REISS, and LEE K. BARRETT, in their official capacities as Commissioners of the Nevada Real Estate Commission, <br><br>Defendants. | Case No. 2:16-cv-01299-RFB-GWF <br><br>**ORDER** |

Before the Court is Defendants' Renewed Motion for Summary Judgment (ECF No. 135), Plaintiffs' Motion for Summary Judgment (ECF No. 136), Plaintiffs' Supplemental Summary Judgment Brief (ECF No. 159), Defendants' Motion to Strike Portions of Amended Complaint (ECF No. 178), Plaintiffs' Motion for a Hearing (ECF No. 188), and Plaintiffs' Motion for Leave to File Plaintiffs' Supplemental Summary Judgment Brief (ECF No. 190). For the reasons stated below, summary judgment is granted in favor of Defendants, Defendants' Motion to Strike is denied, and Plaintiffs' Motion for a Hearing and Motion for Lave to File are denied.

**I. PROCEDURAL HISTORY**

On June 10, 2016, Plaintiffs Gordon Allred, Alvin Najib Mansour, Kevin Najib Mansour,

Perry White, and Nenad Zivkovic (collectively, "Individual Plaintiffs"), Marcus & Millichap Real Estate Investment Services of Nevada, Inc. ("M&M"), and Marcus & Millichap Real Estate Investment Services, Inc. ("M&M National") filed a Complaint and Request for Declaratory and Injunctive Relief against Defendants, officials of the Nevada Real Estate Division ("NRED") and Nevada Real Estate Commission ("NREC"). (ECF No. 1). Plaintiffs assert two Section 1983 claims, alleging that a NREC real estate regulation 1) violates the Commerce Clause, and 2) violates the First Amendment. Plaintiffs additionally seek declaratory and injunctive relief.

On July 12, 2017, Plaintiffs filed a Motion for Preliminary Injunction. (ECF No. 47). Defendants filed a Response on July 25, 2017. (ECF No. 58). The Court held a hearing on the Motion on July 26, 2017 and denied the Motion without prejudice with leave to refile, as the administrative hearings which Plaintiffs sought to enjoin were continued from August to December. (ECF No. 63).

On August 25, 2017, Plaintiffs and Defendants filed Cross-Motions for Summary Judgment. (ECF Nos. 71-72). The same day, Plaintiffs also filed a Statement of Material Facts regarding their Motion for Summary Judgment. (ECF No. 74). The parties filed Responses on September 15, 2017. (ECF Nos. 84-85). Replies were filed on September 29, 2017. (ECF Nos. 92, 93). The International Council of Shopping Centers, The Commercial Real Estate Development Association, and National Multifamily Housing Council (collectively, "Interested Parties") filed a Motion for Leave to File Amicus Brief in Support of Plaintiffs on November 10, 2017. (ECF No. 96). The proposed amicus brief is attached to the Motion. (ECF No. 96-1).

On November 14, 2017, Individual Plaintiffs filed Emergency Renewal of Motion for a Temporary Injunction. (ECF No. 100). M&M filed a Joinder on November 15, 2017. (ECF No. 103). Defendants filed a Response to the Motion for Leave to File Amicus Brief on November 16, 2017. (ECF No. 108). Defendants filed a Response to the Emergency Renewal of Motion on November 20, 2017. (ECF No. 111). Plaintiffs filed a Supplemental Brief in Support of the Motion for a Temporary Injunction on December 1, 2017. (ECF No. 113). The Court denied the Emergency Renewal of Motion on December 3, 2017. (ECF No. 115).

///

On December 4, 2017, Plaintiffs appealed the Court's denial of injunctive relief to the Ninth Circuit. (ECF No. 115). On December 5, 2017, the Ninth Circuit denied Plaintiffs' emergency motion for an injunction pending the appeal of this Court's denial of a motion for preliminary injunction. (ECF No. 119). Plaintiffs voluntarily dismissed their appeal. (ECF No. 120).

On February 6, 2018, the Court held a hearing on the parties' cross-motions for summary judgment. (ECF No. 129). The Court denied each parties' motion without prejudice.

On February 26, 2018, Plaintiffs filed a Motion for Leave to File an Amended Complaint. (ECF No. 131). Defendants responded (ECF No. 138) and Plaintiffs replied (ECF No. 141).

On March 6, 2018, Defendants filed the instant Renewed Motion for Summary Judgment (ECF No. 135) and Plaintiffs filed the instant Motion for Summary Judgment (ECF No. 136). Each party filed a response (ECF Nos. 139, 140) and a reply (ECF Nos. 143, 144).

On June 27, 2018, Plaintiffs filed the instant Supplemental Summary Judgment Brief (ECF No. 159) and a Motion for Leave to File Plaintiffs' Supplemental Summary Judgment Brief (ECF No. 160). On September 20, 2018, the Court granted the Motion for Leave to File and set a hearing regarding the motions for summary judgment. (ECF No. 168). The Court denied Plaintiffs' Motion for Leave to File an Amended Compliant without prejudice, such that Plaintiffs could refile the motion after the Court ruled on the pending summary judgment motions.

The Court held a hearing on October 10, 2018. (ECF No. 173). The Court permitted supplementation of the record regarding the legislative history of S.B. 69 and took the summary judgment motions under consideration. The Court also granted Plaintiffs' oral motion for reconsideration of its order denying leave to file an amended complaint. The Clerk of Court filed Plaintiffs' amended complaint on October 26, 2018. (ECF No. 175).

On November 15, 2018, Defendants filed the instant Motion to Strike Portions of Amended Complaint. (ECF No. 178). Plaintiffs responded on November 21, 2018 (ECF No. 180) and Defendants replied on November 29, 2018 (ECF No. 181).

/ / /

/ / /

On April 24, 2019, the Court held a status conference regarding the status of the case and related case 2:18-cv-02409-RFB-VCF. (ECF No. 187). On July 2, 2019, Plaintiffs filed a Motion for Leave To File. (ECF No. 190).

## II.     FACTUAL FINDINGS

The Court finds the following facts to be undisputed.

M&M is a subsidiary of M&M National. M&M is headquartered in Calabasas, California and has offices in Las Vegas, Nevada and Reno, Nevada. M&M National is also headquartered in Calabasas, California and it has other subsidiaries throughout the United States. M&M and M&M National service commercial real estate investment needs for clients across the United States.

Plaintiff Gordon Allred is First Vice President of Investments with M&M National. Allred holds a California broker's license and works out of a Millichap office in Ontario, California. He resides in California.

Plaintiff Alvin Najib Mansour is Executive Vice President of Investments with M&M National. He is also president for the Manour Group, which is an entity affiliated with M&M National. Alvin Mansour holds a California broker's license and a Texas broker's license. He works out of a Millichap office in San Diego, California. He resides in California.

Plaintiff Kevin Najib Mansour is Managing Partner for the Mansour Group, which is an entity affiliated with M&M National. Kevin Mansour holds a California salesperson's license and works out of the Mansour Group's San Diego, California office. He resides in California.

Plaintiff Perry White is a Vice President of Investments with M&M National or M&M. White holds a Nevada broker's license and works out of the M&M office in Las Vegas, Nevada. He resides in Nevada.

Plaintiff Nenad Zivkovic is an Associate with M&M National. He is also a Senior Associate for the Mansour Group, which is an entity affiliated with M&M National. Zivkovic holds a Nevada salesperson's license. He works out of Millichap's San Diego, California office. He resides in California.

/ / /

1 | Defendant Sharath Chandra is the NRED Administrator and has held that position since at least 2016. He was preceded by Joseph Decker, who held that position at the time of the original Complaint's filing.

Defendant Norma Jean Opatik is an NREC Commissioner and has held that position since at least 2015. She holds a Nevada real estate license.

Defendant Neil Schwartz is an NREC Commissioner and has held that position since at least 2013. He holds a Nevada license.

Defendant Wayne Capurro is an NREC Commissioner and has held that position since at least 2016. He was preceded in that position by Sherrie Cartinella, who held that position at the time of the filing of the original complaint. He holds a Nevada license.

Defendant Devin Reiss is an NREC Commissioner and has held that position since at least 2014. He holds a Nevada license.

Defendant Lee K. Barrett is an NREC Commissioner and has held that position since at least 2015. He holds a Nevada license.

Commercial real estate is a national marketplace in which buyers and sellers of real estate often have their offices or company headquarters in states other than where the commercial property is located. Buyers and sellers of commercial property are predominantly sophisticated private and institutional investors.

Commercial brokerage firms, like M&M National, often have offices in multiple states, if not throughout the country. M&M National has offices or subsidiaries or affiliates in most major U.S. cities, with more than 1,600 affiliated commercial real estate agents across the country.

M&M National and M&M ensure that transactions involving Nevada real estate are overseen by a licensed Nevada broker, even where the buyer and seller are not Nevada residents and never enter the state.

The Nevada Real Estate Division ("NRED") is a Nevada state administrative agency. Nev. Rev. Stat. § 645.001. It is managed by a single appointed Administrator. The Nevada Real Estate Commission ("NREC") is a Nevada state administrative commission. At the time of appointment, each NREC Commissioner must have been a Nevada resident for no less than five years and must

have been actively engaged in business either as a Nevada real estate broker for three years or as a Nevada broker-salesperson for five years. Nev. Rev. Stat. §645.090. The NREC acts in an advisory capacity to the NRED, adopts regulations and conducts hearings on matters of enforcement. Nev. Rev. Stat. §645.050.

Under Nevada law, an individual may not conduct business as a commercial real estate broker or broker-salesperson in Nevada unless they obtain a Nevada license. Nev. Rev. Stat. § 645.230. Nevada law permits out-of-state licensed real estate brokers cooperating with Nevada brokers to engage in real estate transactions. Nev. Rev. Stat. § 645.605. Pursuant to this statute, "[t]he Administrator [of the Real Estate Division] shall have authority to issue certificates authorizing out-of-state licensed brokers to cooperate with Nevada brokers, and the [Nevada Real Estate] Commission shall have authority to promulgate rules and regulations establishing the conditions under which such certificates shall be issued and canceled . . . ."[1] Id. Nevada Administrative Code ("NAC") Section 645.185 contains the rule for how cooperative certificates may operate. Subsection 11, the provision at issue, provides: "An out-of-state broker may not use a cooperating broker's certificate as authority to sell or attempt to sell real estate in Nevada to a resident of Nevada. Such a certificate may be used only for the purpose of allowing the out-of-state broker or salesman to offer real estate in Nevada for sale to a person other than a resident of Nevada." Cooperative certificates are not available to unlicensed Nevada residents seeking to conduct real estate business in Nevada. Id.

Under Nevada law, a real estate broker with a Nevada license "shall have and maintain a definite place of business within the State, which must be a room or rooms used for the transaction of real estate business, or such business and any allied businesses, and which must serve as the office for the transaction of business under the authority of the license, and where the license must be prominently displayed." Nev. Rev. Stat. § 645.550.

No Plaintiff or M&M agent or broker has ever been disciplined or subject to discipline for violating the requirement to have an office in Nevada to hang their license. No Plaintiff or M&M

---

[1] These certificates are referred to by the parties as "cooperative certificates." The Court adopts such language in this Order.

agent or broker has sought or requested from NRED a broker's license that did not require an in-state presence but where the broker could hang her or his license with a local cooperating broker. NRED initiated and pursued disciplinary action against Plaintiff Allred for violating Sections 645.230 and 645.235 for engaging in commercial real estate business conduct without having a Nevada license as a real estate broker, broker-salesperson or salesperson and without having a cooperative certificate from NRED. Plaintiff Allred was ultimately found by NREC to have violated Nevada law and was ordered to pay $301,639.89 in fines and fees.

NRED initiated and pursued two disciplinary actions against Plaintiff White. The first was initiated for violating Section 645.235 by assisting another person in engaging business activity that requires a license, permit, certificate or registration under Chapter 645 even though the person did not have a license, permit, certificate or registration and for violating Section 645.252 by not exercising reasonable skill and care regarding a real estate transaction. Plaintiff White was ultimately found by the NREC to have violated Nevada law and was ordered to pay $16,624.33 in fines and fees. NRED pursued a second disciplinary action against Plaintiff White for violating Section 645.235 by assisting another person in engaging business activity that requires a license, permit, certificate or registration under Chapter 645 even though the person did not have a license, permit, certificate or registration. Plaintiff White was ultimately found by the NREC to have violated Nevada law and was ordered to pay $5,811.79 for this second violation.

NRED initiated and pursued disciplinary action against Plaintiff Alvin Mansour for violating Sections 645.230 and 645.235 for engaging in commercial real estate business conduct without having a Nevada license as a real estate broker, broker-salesperson or salesperson and without having a cooperative certificate from NRED. Plaintiff Alvin Mansour was ultimately found by NREC to have violated Nevada law and was ordered to pay $30,811.79 in fines and fees.

NRED initiated and pursued disciplinary action against Plaintiff Kevin Mansour for violating Sections 645.230 and 645.235 for engaging in commercial real estate business conduct without having a Nevada license as a real estate broker, broker-salesperson or salesperson and without having a cooperative certificate from NRED. Plaintiff Kevin Mansour was ultimately found by NREC to have violated Nevada law and was ordered to pay $5,811.79 in fines and fees.

1    NRED initiated and pursued disciplinary action against Plaintiff Zivkovic for violating Section 645.235 by assisting another person in engaging business activity that requires a license, permit, certificate or registration under Chapter 645. Plaintiff Zivkovic was ultimately found by NREC to have violated Nevada law and was ordered to pay $30,811.79 in fines and fees.

There is no disputed or undisputed evidence indicating that any Plaintiff in this case has been charged with or had action taken against them for violating the requirement for a licensed Nevada broker to have a room or office in Nevada in which their license hangs.

### III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

A litigant must have "standing" in order to "maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 135 S.Ct. 1540, 1547 (2016). Standing consists of three elements. Id. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id.

/ / /

The injury in fact element is the "first and foremost" of the standing elements. <u>Id.</u> "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" <u>Id.</u> at 1548 (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). To establish redressability, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Lujan</u>, 504 U.S. at 561. However, a plaintiff's burden to demonstrate redressability is "relatively modest." <u>M.S. v. Brown</u>, 902 F.3d 1076, 1083 (9th Cir. 2018) (internal citations omitted).

### IV. DISCUSSION

#### a. Motions for Summary Judgment

Plaintiffs have asserted a few arguments in support of their motion and in response to Defendants' motion. First, Plaintiffs have averred that Nevada's requirement that out-of-state real estate brokers obtain a Nevada license and/or a cooperative certificate to assist out-of-state clients with purchases of property in Nevada violates the Dormant Commerce Clause. Second, Plaintiffs have asserted that Nevada's requirement that brokers with a Nevada license maintain an office in Nevada violates the Dormant Commerce Clause.

Defendants have asserted opposing arguments in support of their motion and in response to Plaintiffs' motion. First, the Defendants argue that Plaintiffs do not have standing to challenge the Nevada statutes regarding the cooperative certificate and the requirement that Nevada brokers maintain a Nevada office. Second, Defendants argue that Nevada does not unlawfully burden out-of-state residents or brokers in violation of the Dormant Commerce Clause.

##### i. Individual Plaintiffs Have Standing To Challenge Nevada Licensing Statutes Only

The Court finds that Individual Plaintiffs have standing to challenge only Nevada's licensing statutes as they apply to out-of-state brokers seeking to conduct real estate business within the state. The undisputed facts establish that Individual Plaintiffs are all engaged in commercial real transactions involving clients conducting interstate business and seeking to

purchase property in Nevada.  Individual Plaintiffs have suffered an injury in fact.  All Individual Plaintiffs have had enforcement proceedings brought against them and judgments entered against them for violating Nevada law regarding out-of-state residents or brokers engaging commercial real estate transactions in Nevada without a Nevada license or cooperative certificate.  These enforcement actions and judgments can be traced directly back to the challenged conduct – the inability of out-of-state brokers to practice in Nevada without a Nevada license or cooperative certificate.  Finally, if the Court were to find that Nevada's requirement for a real estate broker to obtain a Nevada license before engaging in interstate commercial real estate transactions in Nevada was unconstitutional, it would result in this Court enjoining enforcement of the state agency's judgments against Individual Plaintiffs.  See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 644 n.3 (2002) (noting lack of jurisdictional bar to a federal court's review of determinations made by a state administrative agency).  Thus, the Court finds that a favorable decision for Individual Plaintiffs would redress their injury from the enforcement judgments entered against them.  The Court therefore finds that Individual Plaintiffs have standing to challenge Nevada's statutes regarding broker licensing and cooperative certificates.

  The Court finds that M&M and M&M National lack standing to change the licensing statutes.  M&M and M&M National can establish no injury traceable to the statutes, which regulates the licensure of individuals.  No enforcement judgments have been or could be entered against these entities.  Nor can M&M and M&M National exert associational standing on behalf of affected brokers, as such standing is reserved for unions and similar organizations whose "purpose is the protection and promotion" of a population or industry.  See Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 343–45 (1977).

  The Court also finds that none of Plaintiffs have standing to challenge Nevada Revised Statutes ("N.R.S.") Section 645.550.  None of Plaintiffs have established an injury in fact related to this particular statute.  Only one of Individual Plaintiffs, Mr. White, has a Nevada broker's license, but he has asserted no threatened or actual injury in relation to this statute.  White actually works out of Las Vegas.  None of Plaintiffs have sought relief from this statute, nor established a possible threat of legal action against them for violation of this statute.  M&M and M&M National

have offices in Nevada, so this statute has not been at issue in the record in this case. None of Plaintiffs have had enforcement actions initiated against them for violation of this statute's requirements. Thus, none of Plaintiffs can establish an injury in fact that is traceable to N.R.S. Section 645.550.

Moreover, the Court finds that a favorable decision on the constitutionality of this statute would not redress the primary injury of Plaintiffs. Plaintiffs' essential argument is that out-of-state licensed brokers should be able to practice and conduct real estate transactions in Nevada for out-of-state clients without obtaining a Nevada broker license or a cooperative certificate. Plaintiffs have not offered disputed or undisputed facts establishing the burden placed upon out-of-state brokers with a Nevada broker's license of having to maintain an office or room in Nevada. Thus, even if the Court were to find that the requirement was unconstitutional, this finding would not result in a favorable outcome for Plaintiffs, since the injury Individual Plaintiffs have suffered derives from their failure to have a Nevada broker's license or cooperative certificate and not from their failure to maintain an office in Nevada as a Nevada-licensed real estate broker. The Court therefore finds that Plaintiffs do not have standing to challenge N.R.S. § 645.550.

### ii. Nevada's Licensing Requirements Do Not Violate The Dormant Commerce Clause.

The Court finds that Nevada's statutes requiring a Nevada broker's license or a cooperative certificate to engage in commercial real estate transactions in Nevada do not violate the Dormant Commerce Clause.

There are two potential analytic standards that may apply in dormant Commerce Clause analysis. First, if a statute or law discriminates against out-of-state economic interests on its face, it is "virtually *per se* invalid" and "will survive only if it 'advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 338 (2008) (citations omitted). Absent facial or purposeful discrimination, however, the Pike balancing test applies, and "the law 'will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" Id. at 338–39 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).

The Court first addresses the appropriate standard to apply to its analysis of this issue and finds that the Pike balancing test is the applicable standard. It is undisputed that, under Nevada law, an out-of-state individual can obtain a Nevada broker's license which grants that individual all of the same professional authority to operate as an individual who is in state and licensed. Nev. Rev. Stat. §§ 645.330(1), (4). Moreover, and importantly, the statute describing eligibility for a Nevada broker's license imposes identical requirements on both non-residents and residents. See Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Berch, 773 F.3d 1037, 1049 (9th Cir. 2014) ("Arizona requires the same of its citizens as it does citizens of other states."); Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown, 567 F.3d 521, 525 (9th Cir. 2009) ("California treats out-of-state opticians . . . the same as in-state opticians."). The law therefore does not facially exclude out-of-state brokers and the Pike balancing test applies to the Court's inquiry regarding Nevada's statutory licensing requirement for real estate brokers.

Applying the Pike balancing test, the Court first finds that Nevada's statutory scheme regarding the licensing of real estate brokers reflects the state's legitimate concern and authority to regulate professional practices and licensure within its borders. See, e.g., Nationwide Biweekly Admin., Inc. v. Owen, 873 F.3d 716, 736 (9th Cir. 2017) ("Anyone acting as a prorater in California must first obtain a prorater license from California. . . . On its own, the requirement of state licensure is legitimate[.]"); cf. Nat'l Ass'n for the Advancement of Multijurisdiction Practice, 773 F.3d at 1045 (noting the extreme deference given to a state's regulation of its licensed professionals). The state's limitation on the activities of non-Nevada licensed real estate professionals is consistent with the state's legitimate interest in establishing standards for and monitoring the activities of real estate professionals who operate in Nevada in relation to Nevada property law. The state's interest is particularly strong in the instant professional context, as states are uniquely vested with establishing laws regarding the buying and selling of a state's real property. Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). Thus, the Court finds that the burden imposed on interstate commerce is not clearly excessive in relation to local benefits. The regulatory system ensures that brokers listing, advertising, marketing, and selling real property in Nevada are knowledgeable of the

applicable state law and subject to professional standards that help prevent fraud and ensure minimum competence. Out-of-state residents are subject to the same licensing requirements as in-state residents. Neither in-state or out-of-state residents may conduct real estate business without obtaining the proper licenses and permissions under Nevada law.

Additionally, the Court finds that the burden is not excessive as any professional who would seek to competently and adequately represent a client involved in a real estate transaction in Nevada would necessarily need to know and understand Nevada real estate or property law. Plaintiffs have not established—nor could they—that a real estate professional would not need to be knowledgeable of and professionally conversant in Nevada real estate law to adequately facilitate real estate transactions that were consistent with Nevada law. Plaintiffs have not established—nor could they—that property law in Nevada (or any other state) was so generic and common that knowledge of another state's law by licensure would make one fully knowledgeable of all the essentials and nuances of Nevada property law. Cf. State Box Co. v. United States, 321 F.2d 640, 641 (9th Cir. 1963) (referencing the lack of uniformity across states' real property laws).

Finally, the Court rejects Plaintiffs' singular focus on the cooperative certificate without consideration of the entire statutory scheme as a basis for establishing a constitutional violation. The fact that Nevada, in its discretion, permits out-of-state licensed brokers to conduct real estate business in limited circumstances does not *ipso facto* create a constitutional basis or requirement for the state to grant out-of-state licensed brokers the same authority to Nevada-licensed brokers. This exercise of discretion does not curtail or alter the state's ability to regulate real estate professionals whether residents or not who engage in real estate business in Nevada subject to Nevada's property law.

Pursuant to the Pike test, the Court finds that the Nevada licensing scheme as applied to out-of-state brokers does not violate the Dormant Commerce Clause. Therefore, the Court grants summary judgment in favor of Defendants and against Plaintiffs.

### b. Motion to Strike

Defendants argue that certain portions of Plaintiffs' Amended Complaint, filed with leave of Court on October 26, 2018, exceed the scope of the Court's leave to amend. Defendants invoke

Rule 12 of the Federal Rules of Civil Procedure, which empowers this Court to strike from the pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

The Court granted Plaintiffs leave to amend in order to raise the issue of N.R.S. Section 645.550 and its relationship to the cooperative certificate. The Court specifically stated that it would "allow for amendment as it relates to adding a challenge to Section 555" and that it would not consider the addition of "other types of challenges." (ECF No. 179 at 12). The Court did not approve the addition of unrelated facts and a renewed First Amendment claim in the Amended Complaint. The Court therefore grants Defendants' Motion to Strike Portions of Amended Complaint in regard to the First Amendment claim.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Renewed Motion for Summary Judgment (ECF No. 135) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (ECF No. 136) and Plaintiffs' Supplemental Summary Judgment Brief (ECF No. 159) are DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Potions of Amended Complaint (ECF No. 178) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for a Hearing (ECF No. 188) is DENIED as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Plaintiffs' Supplemental Summary Judgment Brief (ECF No. 190) is DENIED for lack of good cause. LR 7-2(g).[2]

---

[2] Even if the Court permitted Plaintiffs to file their Supplemental Summary Judgment Brief, the Court finds that Tennessee Wine & Spirits Retailers 14 Association v. Thomas, No. 18-96, 2019 WL 2605555 (U.S. June 26, 2019), is inapplicable to the analysis in this case. In Tennessee Wine, the Supreme Court evaluated the constitutionality of a statute that facially discriminates against out-of-state residents and was therefore subject to strict scrutiny. Id. at *7. As discussed above, Nevada's licensing scheme imposes identical requirements on both non-residents and residents and is therefore subject to the less stringent Pike balancing test.

**IT IS FURTHER ORDERED** that judgment be entered in favor of Defendants. The Clerk of Court is instructed to close this case.

DATED: July 8, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**